UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DONALD E. BISHOP,

       Plaintiff,

    -v-                                  06-CV-0595-E (Sc)
                                               **ORDER**

MICHAEL J. ASTRUE[1]
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

---

INTRODUCTION

Plaintiff Donald E. Bishop ("Plaintiff" and/or "Bishop"), brings this action pursuant to the Social Security Act, (codified in relevant parts at 42 U.S.C. § 401 et. seq. and 42 U.S.C. § 1381 et. seq.) claiming that the Commissioner of Social Security improperly denied his application for disability insurance. Specifically, Bishop alleges that the decision of an Administrative Law Judge ("ALJ") was erroneous and not supported by either the substantial evidence on the record or the applicable law. Bishop requests that the Court reverse the judgment of the Commissioner and find him entitled to disability benefits under the provisions of the Social Security Act.

The Commissioner moves for judgment on the pleadings on grounds that the ALJ's decision was correct, was supported by substantial evidence, and was made in accordance with applicable

---

1. Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for his predecessor Commissioner JoAnne B. Barnhart as the proper defendant in this suit.

law.  Plaintiff opposes the Commissioner's motion and cross-moves for judgment on the pleadings in her favor.  For the reasons discussed below, the Commissioner's motion for judgment on the pleadings is granted and the Plaintiff's cross-motion is denied.

BACKGROUND

On July 24, 2003, Plaintiff Donald E. Bishop applied for Social Security disability benefits, claiming that he became disabled due to a severe fall at work on August 8, 2002 (Tr. 60-62).  His application was denied on February 27, 2004 (Tr. 26-29). He timely filed a request for an administrative hearing.  That hearing was held before ALJ Marilyn Zahn, and in a decision dated May 22, 2006, the ALJ determined that the Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 11-24). Plaintiff then filed for review of the ALJ's decision by the Social Security Appeals Council (Tr. 7-8). That request was denied by the Council on July 9, 2006 (Tr. 4-6), and Plaintiff subsequently filed this action.

The Plaintiff was, at the time of his accident, 41 years old. He is a high school graduate (Tr. 76).  Bishop had been employed as a roofer continuously from 1985 until the date of his accident in 2002 (Tr. 71).  This position was determined by the vocational expert to be skilled medium work (Tr. 477).

Bishop was working on the roof of a building on August 8, 2002 and fell through an open skylight, sustaining severe injuries as a

result (Tr. 130). He suffered a laceration of the scalp, left chest pneumothorax, left lung pulmonary contusion, left rib fracture, left scapular fracture, right fibula fracture, proximal acromial process, and T8 fracture (Tr. 130-134).

On October 30, 2002, the injuries to Bishop's left shoulder and right leg were treated by Dr. Joseph Kowalski (Tr. 206). Dr. Kowalski reported improvement in Plaintiff's condition and stated that he could continue activity within his "range of comfort." Id.

For the purposes of a NY Worker's Compensation claim, Bishop underwent independent medical examinations ("IME") with Dr. Stephen Joyce in December 2002 and April 2003 (Tr. 223-227). At the December examination, Dr. Joyce found that the Plaintiff had marked dorsal spine tenderness (Tr. 226). He opined that Plaintiff could perform light duty, sedentary jobs (Tr. 227). The April 2003 examination resulted in Dr. Joyce finding a partial disability (Tr. 223-24).

Plaintiff began treatment for his injuries with Dr. Louis Suddaby in December of 2002. At that time, Dr. Suddaby found largely the same objective diagnosis as had been found in previous examinations (Tr. 232). He recommended an MRI of the spine and physical therapy, and noted that the Plaintiff was "totally disabled for work". Id. A subsequent visit in January 2003 opined that surgery would not be needed (Tr. 230).

On March 29, 2003, Dr. Suddaby examined Bishop and while he made no significant physical findings, noted that Plaintiff continued to have pain (Tr. 229). Dr. Suddaby said he had "no good explanation why his fracture should be painful at this stage" and further stated that someone like the Plaintiff should be able to heal a fracture "within 3-6 months and be pain free." Id. He said that the Plaintiff refused vertebroplasty to improve any residual pain. Id. Dr. Suddaby recommended that the Plaintiff contact the New York State Department of Vocational and Educational Services ("VESID") for retraining to another job, and to that end downgraded Bishop's disability to 75%. Id.

Brad Austin, a physical therapist, examined the Plaintiff's functional capacity on April 9, 2003 (Tr. 430-40). He notes that the Plaintiff was non-compliant with the exam and refused most of the tests (Tr. 430-31). Austin also states that Plaintiff has a "self-perceived severe disability" (Tr. 431). Due to Plaintiff's noncompliance with testing, Austin was unable to make a complete evaluation of his physical functional capacity. Id.

The Plaintiff saw Dr. Suddaby for a final time in July 2003 (Tr. 274). At that examination, Dr. Suddaby noted the results of the physical therapist's exam and gave Bishop "benefit of any doubt" regarding his subjective pain, laying out a plan for pain management with the Plaintiff (Tr. 228).

Dr. Kowalski, the physician who originally treated Bishop's injuries, saw the Plaintiff in August of 2003 for a one-year follow-up (Tr. 362). At that time, Dr. Kowalski remarked that the Plaintiff had mild disability in his left shoulder, but a full range of motion and good strength. Id. The doctor recommended that Bishop avoid "strenuous" activity but otherwise reported no major limitations. Id.

Also in August of 2003, the Plaintiff began treatment with Dr. Romanth Waghmarae, a physician (Tr. 299-301). Dr. Waghmarae opined that Bishop's pain stemmed from his traumatic compression fracture of the T8 vertebral body (Tr. 300). He prescribed Tylenol with codeine, epidural steroid injections, and a TENS unit (Tr. 300-01). Most significantly, he stated that Plaintiff was not advised to "go back to roofing as an occupation" (Tr. 301).

Dr. Robert Hill, PhD, a psychologist, examined the Plaintiff on February 17, 2004 (Tr. 249-53). He noted that Bishop spent his days drinking alcohol in increasingly excessive amounts. Id. He also reported that Plaintiff used marijuana frequently. Id. Dr. Hill diagnosed adjustment disorder, depressed and anxious mood, alcohol dependence, and marijuana dependence (Tr. 252). He found, however, that Plaintiff's symptoms did not "rule out functional capacities". Id. Dr. Hill recommended vocational training and drug/alcohol treatment in addition to continuing medical treatment. Id.

Plaintiff continued to see Dr. Waghmarae with no significant changes until April 2004. At that time, Dr. Waghmarae noted that while pain medication had provided some relief, the Plaintiff had plateaued and Dr. Waghmarae switched the prescription to Duragesic patches (Tr. 291). Also at that time, the Plaintiff had a discussion with Dr. Waghmarae about his excessive use of alcohol and the combined effects with pain medication. Id. Dr. Waghmarae recommended Alcoholics Anonymous, which the Plaintiff refused, saying that it would be "impossible." Id.

Dr. Waghmarae continued to see Bishop throughout 2004 and 2005, remarking in August and October of 2004 that Bishop was 75% disabled (Tr. 282, 286). In December 2004 Dr. Waghmarae recommended that the Plaintiff undergo neuroplasty and other invasive procedures, but Bishop refused these treatments, saying in February 2005 that he was too frightened by them (Tr. 279, 281). While the ALJ requested functional assessment forms from Dr. Waghmarae, they were never provided (Tr. 19).

Plaintiff began psychiatric treatment with Dr. George Parlato on May 20, 2005 (Tr. 319-20). Dr. Parlato diagnosed Bishop with mood disorder relating to his injuries and prescribed Lexapro (Tr. 320). He opined that Plaintiff remained "unable to work now or in the foreseeable future". Id. Dr. Parlato saw the Plaintiff monthly from this point. He prescribed Valium and Lunesta, a sleep aid, at various times beginning in June 2005 (Tr. 316-20).

However, the ALJ found that Plaintiff renewed his medications irregularly and, for example, going from June 2005 to January 2006 without renewing his Valium. (Tr. 20, 441-43). Significantly, in November 2005 Dr. Parlato noted that the Plaintiff had discontinued alcohol use.

## DISCUSSION

I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo). The court is also authorized to review the legal standards employed by the Commissioner in evaluating the Plaintiff's claim.

The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the court is convinced that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

II. **The ALJ's finding that the Plaintiff could perform other work and was not disabled was supported by substantial evidence.**

The ALJ in her decision found that the Plaintiff was not disabled within the meaning of the Social Security Act. In doing so, the ALJ applied the Administration's 5-step sequential analysis for evaluating disability cases. See 20 C.F.R. § 404.1520.[2] The

---

[2] 2. The five-step analysis is essentially as follows: (1) The ALJ determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, ALJ considers whether the claimant has a severe impairment that limits his physical and/or mental ability to do basic work activities and meets the duration requirements listed in 20 C.F.R. § 404.1509; (3) if claimant suffers such impairment, ALJ determines whether, based upon medical evidence, the claimant's impairment matches one of the listed impairments found in Appendix 1 of Subpart P, if it does, the claimant is disabled; (4) if none of the impairments are listed, the ALJ determines whether, given his residual functional capacity ("RFC"), the claimant can perform his past relevant work; and (5) if he

ALJ gives a detailed explanation of the process in her decision (Tr. 12-13).  Plaintiff meets his burden at steps one and two of the process according to the ALJ (Tr. 13).  The Plaintiff was found not to have a "listed impairment" in step three (Tr. 13). Plaintiff's dispute largely arises in steps four and five, wherein the ALJ made a determination of the Plaintiff's Residual Functional Capacity (RFC), and found that while the Plaintiff could not perform past relevant work, significant jobs existed in the economy that the Plaintiff could perform (Tr. 13-23).  Based upon this finding, the ALJ determined that the Plaintiff was not disabled (Tr. 24).

Plaintiff raises three main objections to the ALJ's decision. First, Plaintiff argues that the ALJ did not consider all of his impairments in combination.  Second, the Plaintiff alleges that the ALJ improperly failed to accord controlling weight to treating medical sources.  Intertwined with these two arguments is a third, in which Plaintiff argues that the ALJ improperly found his subjective testimony not completely credible.

A.  The ALJ properly considered Plaintiff's impairments in combination.

Plaintiff alleges that the ALJ failed to consider his impairments in combination.  I find, upon review of the record,

---

cannot perform his past relevant work, the ALJ must determine if the claimant can make an adjustment, given his RFC, to perform other work that exists in the economy.  If the claimant reaches step 5 and cannot perform other work, the claimant is disabled as a matter of law.

that the ALJ made a comprehensive evaluation of the entire medical record encompassing all of Plaintiff's physical and psychiatric impairments and based her findings upon substantial evidence.

It is the clear rule in the Second Circuit that "all complaints ... must be considered together" for the purpose of determining the claimant's RFC. DeLeon v. Secretary of Health and Human Services, 734 F.2d 930, 937 (2d Cir. 1984). It is improper to determine a claimant's work capacity based solely upon an evaluation of the severity of the claimant's individual complaints. Gold v. Secretary of Health, Ed. and Welfare, 463 F.2d 38, 42 (2d Cir. 1972).

The ALJ first combines the Plaintiff's impairments in step 3 of her analysis, determining whether the Plaintiff has a listed impairment. Specifically, she refers to a "combination of impairments" that would qualify as a listing-level impairment (Tr. 13). To make this finding, the ALJ relied upon "all symptoms and the extent to which this symptoms can reasonably be accepted as consistent with the objective medical evidence." Id.

The ALJ further considers all of the objective medical evidence in combination in determining the Plaintiff's RFC. It is significant that at every step of the analysis, the ALJ was careful to examine both the Plaintiff's physical condition and psychiatric condition (Tr. 14-23). These examinations are significantly intertwined and the ALJ considered both aspects.

There is no indication whatsoever that the ALJ made any determination anywhere in her decision based on anything other than a combination of all the credible evidence.

B.  The ALJ properly weighed the medical evidence in the record as a matter of law.

Plaintiff argues that the statements of Dr. Waghmarae that the Plaintiff is "disabled" and similar statements by Dr. Parlato, two of the Plaintiff's many treating physicians, should have been ascribed controlling weight.  In rendering a decision, the ALJ said that Dr. Waghmarae's statements that the Plaintiff was "disabled" were "conclusions that by law are left to the Commissioner, and no weight can be accorded to such conclusions" (Tr. 21).  She then found that Dr. Waghmarae's opinion was "not explained or well supported."  Id.  The ALJ considered the statement by Dr. Parlato that the Plaintiff is "disabled" essentially in the same manner. The ALJ was correct in both instances.

In order to be granted controlling weight, opinions from treating sources must "reflect judgments about the nature and severity of [claimant's] impairment(s)."  20 C.F.R. §§ 404.1527(a)(2). Opinions from a medical source that a person is disabled "are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(e). More specifically, "A statement by a medical source that you are

11

'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F. R. § 404.1527(e)(1). Furthermore, "[t]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p. A court in the Western District has previously held that some determinations, "including the ultimate finding of disability, are specifically reserved to the Commissioner." Montalvo v. Barnhart, 457 F.Supp.2d 150 (W.D.N.Y. 2006); See also Snell v. Apfel, 177 F.3d 128 (2d. Cir. 1999).

Plaintiff relies on Garcia v. Barnhart, 85 Soc. Sec. Rep. 167 (Unreported, S.D.N.Y. 2003), to support his argument. The Garcia case is not applicable. In Garcia, the district court remanded to the Commissioner for further proceedings, finding that the ALJ had improperly dismissed the medical diagnosis of Garcia's treating physician. The statements which Plaintiff asks this court to rely upon (treating medical sources' statements that he is "disabled"), however, are not medical diagnosis but legal conclusions reserved to the Commissioner. Montalvo, 457 F.Supp.2d 150; Snell, 177 F.3d 128; 20 C.F.R. § 404.1527(e)(1); SSR 96-5p. The law firmly establishes that the repeated statements by Dr. Waghmarae and Dr. Parlato that Plaintiff is "disabled" are not entitled to controlling weight.

C. The ALJ is specifically empowered to make an assessment of the Plaintiff's credibility, and her findings in that regard were supported by substantial evidence.

The Second Circuit has held that "The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."  Marcus v. Califano, 615 F.2d 23 (2d Cir. 1979). Plaintiff argues throughout his brief that the ALJ improperly discounted his credibility as to subjective statements.  I find that the ALJ properly exercised her discretion to evaluate the credibility of the Plaintiff's testimony, and her evaluation was supported by substantial evidence.

In deciding whether to accept the subjective testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir.1996).

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of her symptoms.  The ALJ may choose to discredit or not accept certain testimony from the Plaintiff, so long as she "makes specific findings stating clear and convincing reasons for doing so."  Id. at 1284 (citation omitted).  To wit, "the ALJ must state

specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." Id.

The ALJ accepts the objective medical evidence from the record in her decision. Furthermore, she accepts that the combination of impairments the Plaintiff is inflicted with could reasonably be expected to produce some degree of symptom. This is evident in her findings that the Plaintiff has impairments that are severe and that the Plaintiff cannot perform past relevant work (Tr. 13, 22).

The ALJ made specific findings stating clear and convincing reasons for each part of the Plaintiff's testimony she did not find credible. The ALJ undertook an extended discussion of the various subjective claims made by the Plaintiff, her reasons for doubting the credibility of those claims, and the objective evidence upon which she based those doubts (Tr. 20-22). For example, the ALJ drew upon a statement from Dr. Suddaby in March 2003 that "he had no explanation for the claimant's continued pain, and recommended that the claimant obtain vocational training for a light or sedentary job" (Tr. 20). The ALJ also used the McGill Pain Questionnaire completed by Plaintiff in her analysis, finding that "his score indicated that he exaggerated his symptoms" (Tr. 21). The ALJ reduced the Plaintiff's credibility not only because of his problems with drug and alcohol abuse but also because he was "not honest with Dr. Tan, as he denied any history of alcohol or drug

14

problems when the claimant was still drinking and using marijuana at that time" (Tr. 21-22).

When the ALJ has supported her credibility determination with substantial evidence, as has been done in this case, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain."  <u>Aponte v. Secretary, Dept. of Health and Human Services of U.S.</u>, 728 F.2d 588, 591 (2d Cir. 1984).  The ALJ makes a detailed assessment of the facts she used to arrive at this determination. The ALJ's determination is supported by substantial evidence in the record and is not subject to reversal by this court.

## <u>CONCLUSION</u>

The ALJ's findings are supported by substantial evidence in the record and are proper as a matter of law.  Therefore, the ALJ decision is affirmed. Accordingly, the Commissioner's motion for judgment on the pleadings is granted.  The Plaintiff's motion for judgment on the pleadings is denied.

**ALL OF THE ABOVE IS SO ORDERED.**

                                <u>s/Michael A. Telesca</u>
                                 MICHAEL A. TELESCA
                                 United States District Judge

Dated:    January 28, 2008
          Rochester, New York